AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)          ☐ Original   ☐ Duplicate Original

| LODGED | | |
| --- | --- | --- |
| CLERK, U.S. DISTRICT COURT | | |
| 10/25/2021 | | |
| CENTRAL DISTRICT OF CALIFORNIA | | |
| BY: DTA DEPUTY | | |

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

**FILED**

Oct 25, 2021

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY  *Nancy Boehne*
Deputy Clerk, U.S. District Court

United States of America

v.

JOSE LUIS SANCHEZ,

Defendant(s)

Case No. **8:21-mj-00713-DUTY**

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 21, 2020, in the county of Orange in the Central District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Ryan Averill

*Complainant's signature*

Ryan Averill, ATF Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____October 25, 2021_____

**DOUGLAS F. McCORMICK**

*Judge's signature*

City and state:  Santa Ana, California

Hon. Douglas F. McCormick, U.S. Magistrate Judge

*Printed name and title*

AUSA:  K. Spencer

## AFFIDAVIT

I, Ryan Averill, being duly sworn, declare and state as follows:

### I.  INTRODUCTION

1.   I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since May 2015.  I completed the Criminal Investigations Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia.  I also completed the ATF Special Agent Basic Training National Training Academy in Brunswick, Georgia.  During those courses of study, I received training in the investigation of federal firearm and explosive violations.  Before becoming a Special Agent with the ATF, I was employed as a Patrol Officer with the City and County of Honolulu Police Department ("HPD") for approximately four years.

2.   While employed as an ATF agent and an HPD Patrol Officer I have been involved in numerous investigations dealing with the possession and use of firearms by prohibited persons. I have also participated in the undercover purchase of firearms from prohibited persons.

### II. PURPOSE OF AFFIDAVIT

3.   This affidavit is made in support of a criminal complaint and arrest warrant charging JOSE LUIS SANCHEZ ("SANCHEZ") with a violation of 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm and ammunition.

4.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, my review

of relevant audio and video, and information obtained from
various law enforcement personnel.  This affidavit is intended
to show merely that there is sufficient probable cause for the
requested complaint and warrant and does not purport to set
forth all of my knowledge of or investigation into this matter.
Unless specifically indicated otherwise, all conversations and
statements described in this affidavit are related in substance
and in part only.

### III.  <u>STATEMENT OF PROBABLE CAUSE</u>

### A.    SUMMARY OF PROBABLE CAUSE

5.    In July 2020, a confidential informant working with
the ATF (the "CI-1") contacted a female later identified as
JEANETTE ALCAZAR via Facebook Messenger for the purpose of
purchasing narcotics from ALCAZAR.  Through ALCAZAR, CI-1 and
two undercover agents working from ATF and the Costa Mesa Police
Department ("CMPD") (the "UCs") arranged to purchase a firearm
from SANCHEZ, who sold them a shotgun and twenty-seven rounds of
ammunition in Buena Park, California on July 21, 2020.  Further
investigation revealed that at the time SANCHEZ possessed the
firearm, he had previously been convicted of multiple felonies.

### B.    POSSESSION OF A STOLEN MAVERICK ARMS 12 GAUGE SHOTGUN, TWO ROUNDS OF 12 GAUGE AND TWENTY FIVE ROUNDS OF 20 GAUGE SHOTGUN AMMUNITION BY SANCHEZ ON JULY 21, 2020

6.    In July 2020, an ATF Confidential Informant ("CI-1")
began an online conversation via Facebook Messenger with a
female later identified as JEANETTE ALCAZAR ("ALCAZAR"), for the

purpose of purchasing narcotics and firearms from ALCAZAR.[1]  In
subsequent conversations, ALCAZAR indicated that she had a
shotgun for sale and CI-1 agreed to purchase it from her.
ALCAZAR indicated that her friend was the owner of the firearm
and she was acting as a middleman for the sale.  ALCAZAR and CI-
1 agreed to meet to conduct the sale on July 21, 2020.

7.    On July 21, 2020 at approximately 3:32 p.m., an ATF
Special Agent ("UC-1") and a Costa Mesa Police Department
Detective ("UC-2"), both acting in an undercover capacity, along
with CI-1 arrived at 7561 11th Street, Buena Park, California,
which was the address provided to them by ALCAZAR as the
location where the sale of the firearm would be conducted.  The
UCs and CI-1 were in a black Ford truck (the "UC Vehicle").

8.    At approximately 3:43 p.m., an unknown person who
appeared to be a driver from ride share service dropped off
ALCAZAR near the UC Vehicle.  ALCAZAR approached the UC Vehicle
and greeted CI-1, who exited the vehicle to greet her. ALCAZAR
then made a phone call on her cell phone; only one side of the

---

[1]    CI-1, who  was involved in this investigation,
cooperates in exchange for monetary gain.  CI-1 has been paid as
part of this investigation.  CI-1 has provided truthful and
credible information related to this investigation as well as
previous and current ongoing investigations.  CI-1 was
previously a member of a criminal street gang but informed me
that he is no longer active or affiliated with the gang.  A
criminal records check revealed the following information: In
2011, CI-1 had a juvenile adjudication for first degree burglary
and was sentenced to probation and 120 days in juvenile hall; in
2013, CI-1 was arrested for participating in a criminal street
gang, carrying a concealed weapon, and obstructing a public
officer (criminal records state that prosecution was deferred in
lieu of revocation of parole); and in 2017, CI-1 was arrested
for possession of a controlled substance (a criminal records
check revealed that prosecution was declined due to an
inadmissible search.)

ensuing conversation was captured by the surveillance video
recording.  ALCAZAR asked the person on the other line "Where
are you?"  A moment later ALCAZAR hung up the phone and stated,
"He's gonna come now, he's walking."  ALCAZAR then entered the
UC Vehicle and began speaking to the UCs and CI-1.  UC-2 asked
ALCAZAR if they were going somewhere and ALCAZAR responded,
"he's coming right now."  The UCs understood this to mean that
the gun source was coming to their location.  The UCs, CI-1, and
ALCAZAR continued in a casual conversation, briefly discussing
narcotics prices, while waiting for the firearms source to
arrive.

     9.   At approximately 3:50 p.m., ALCAZAR received a phone
call from an unknown person.  After a short conversation ALCAZAR
told the UCs and CI-1, "He's getting it out of the garage, ok?"
ALCAZAR then received another phone call requesting that they
drive to the parking lot of a nearby laundromat, located at 6711
Beach Boulevard in Buena Park, California.  ALCAZAR remained on
the phone and provided directions to UC-2, who was driving the
UC Vehicle.  When the UCs arrived in the area they were directed
to by ALCAZAR, they observed a male individual who was later
identified as SANCHEZ.  UC-2 parked the UC Vehicle behind
SANCHEZ's vehicle and CI-1 and ALCAZAR exited the UC Vehicle and
greeted SANCHEZ.

     10.  At approximately 4:00 p.m., after exchanging greetings
with CI-1 and ALCAZAR, SANCHEZ approached the UC Vehicle, opened
the rear door and greeted the UCs.  SANCHEZ identified himself
as "Lucky".  SANCHEZ and the UCs agreed to conduct the sale in

the UC Vehicle.  SANCHEZ then returned to his vehicle, retrieved a black canvas bag and came back and entered the UC Vehicle. CI-1 and ALCAZAR remained outside the UC Vehicle during the transaction.

11.  When SANCHEZ opened the black canvas bag, the UCs saw that it contained a Maverick Arms 12 Gauge shotgun, bearing serial number MV87578U, and two rounds of 12 Gauge ammunition. SANCHEZ remarked that there was ammunition inside the bag as well.  UC-1 told SANCHEZ that he frequently purchased firearms and asked SANCHEZ for his phone number in case SANCHEZ had any additional firearms for sale at a later time.  SANCHEZ provided UC-1 with the telephone number (714) 860-9787.

12.  SANCHEZ then picked up the firearm and demonstrated to the UCs how to manipulate it.  SANCHEZ told UC-1 that he had additional ammunition that he would give to UC-1 in the same transaction.  SANCHEZ then confirmed that the price for the firearm was $500.00.  UC-1 then counted out $500.00 in U.S. currency and handed it to SANCHEZ in exchange for the firearm and ammunition.

13.  The UCs and SANCHEZ began exchanging goodbyes and UC-1 sent a text message to the phone number provided by SANCHEZ to ensure the number was correct.  SANCHEZ confirmed he received the text message.  The UCs understood that SANCHEZ would be returning shortly with additional ammunition.

14.  At approximately 4:05 p.m., SANCHEZ exited the vehicle.  ALCAZAR and CI-1 then got back into the UC Vehicle as

5

the UCs waited for SANCHEZ to return with the additional ammunition.

15.  While waiting for SANCHEZ to return, UC-1 provided ALCAZAR with $100.00 in U.S. currency for brokering the firearms transaction.

16.  At approximately 4:15 p.m. the UCs observed SANCHEZ walking back toward the laundromat.  They drove to meet with SANCHEZ and SANCHEZ reached into the UC Vehicle and placed a box of shotgun ammunition into the black bag containing the firearm and other ammunition.  SANCHEZ then proceeded back towards the laundromat.  The UCs dropped off ALCAZAR at the laundromat and saw her meet up with SANCHEZ as the UCs and CI-1 were leaving the area.

17.  That same day, the UCs requested that Fullerton Police Department conduct a records check of the license plate on the vehicle that SANCHEZ was driving.  The records check revealed that the vehicle was registered to an individual named Marisol Molina who lived at 7572 11th Street, Apartment 1, Buena Park, California.  A records check of that address revealed an individual Jose Luis Sanchez, who matched the approximate age of the suspect, associated with that address.

18.  On or about July 22, 2020, UC-1 conducted a records check/query through various law enforcement databases for a booking photograph of SANCHEZ.  Upon obtaining and reviewing an October 8, 2019 booking photograph with an associated name of "Jose Luis Sanchez", UC-1 subsequently positively identified the

individual depicted therein as the same person from whom the UCs had purchased a firearm.

**C.   SANCHEZ FELONY CONVICTIONS**

19.   A search of law enforcement databases revealed SANCHEZ has the following felony convictions:

a.   California Health and Safety Code Sections 11377(a) and 11350(a), possession of methamphetamine and possession of cocaine, on or about March 3, 2012 in the Superior Court of the State of California, County of Orange, case number 12WF0476, for which he was sentenced to three years of probation;

b.   California Health and Safety Code Section 11377(a) and Penal Code Section 21810, possession of methamphetamine and possession of brass knuckles, on or about April 5, 2012 in the Superior Court of the State of California, County of Orange, case number 12CF0763, for which he was sentenced to 90 days in jail;

c.   California Penal Code Section 211, second degree robbery, on or about September 18, 2013 in the Superior Court of the State of California, County of Orange, case number 13NF0029, for which he was sentenced to three years in prison;

d.   California Health and Safety Code Section 11352(A), narcotics sales, on or about June 6, 2016 in the Superior Court of the State of California, in the County of Orange, case number 15NF3407, for which he was sentenced to four years in prison; and

e.    California Health and Safety Code Sections 11378 and 11379(A), possession of narcotics for sale and narcotics possession, on or about June 1, 2018 in the Superior Court of the State of California, County of Orange, case number 17NF2698, for which he was sentenced to two years in prison.

**D.    INTERSTATE NEXUS**

20.   On or about August 31, 2021, I provided an ATF Interstate Nexus Expert with digital photographs of the Maverick Arms 12 gauge shotgun, bearing serial number MV87578U, and one round of Winchester 12 gauge shotgun ammunition, both of which had been provided to the UCs by SANCHEZ.  In speaking to the ATF Nexus expert, I learned that Maverick Arms and Winchester Repeating Arms do not manufacture firearms or ammunition in California.  Since both the firearm and ammunition were recovered in California, I believe that they have traveled in and affected interstate commerce.

## IV. <u>CONCLUSION</u>

21.  For all the reasons described above, I submit that there is probable cause to believe that SANCHEZ committed a violation of 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm/ammunition.  I respectfully request the Court issue the requested arrest warrant and criminal complaint.


_____/s/_____
Ryan Averill, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Attested to by the applicant in
accordance with the requirements
of Federal Rule of Criminal
Procedure 4.1 by telephone on this
<u>25th</u> day of October 2021.


**DOUGLAS F. McCORMICK**
_____
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE